Russell H. **ALLEN**, et al, Appellants,

v.

**AMERICAN PETROFINA, INC.**, et al, Appellees.

No. 09–91–110 CV.

Court of Appeals of Texas, Beaumont.

Sept. 10, 1992.

Rehearing Denied Oct. 15, 1992.

Richard J. Clarkson, Reaud, Morgan, & Quinn, Beaumont, for appellants.

James R. Old, Jr., Andrews & Kurth, Houston, Gail Jenkins, Benckenstein, Norvell, Bernsen & Nathan, D. Allan Jones, Louis H. Knabeschuh, Jr., Orgain, Bell & Tucker, Beaumont, Arthur R. Almquist, Mehaffy & Weber, James H. Owen, Alenik & Associates, Houston, Boyd Wells, Wells, Peyton Beard Greenberg Hunt & Crawford, Beaumont, Pete Andarsio, Dunn, Kacal, Adams, Livings, Pappas & Law, Douglas Koger, Knippa & Kral, James Behrmann, Holtzman & Urquhart, B. Stephen Rice, Hays, McConn, Price & Pickering, Houston, David E. Grove, Benckenstein, Norvell, Bernsen & Nathan, Beaumont, William E. Schweinle, Jr., Ellison, Schweinle, Parish & Beerbower, Lorri Stiffler, Baker & Botts, Houston, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Appeal from an Order granting a summary judgment. The trial bench ordered severed the various appellees' motions for partial summary judgments from the main cause. The severed portion of the cause was redocketed under a new cause number, being number B–126,986–A. The trial court ordered that copies of the pertinent pleadings be filed under the new cause number. The Order that granted the appellees' motions for partial summary judgment dismissed the appellants' personal injury and/or wrongful death and/or survivor claims as being barred by limitations as to some of the numerous appellees.

This appeal is basically from the action taken by the 60th District Court of Jefferson County on March 12, 1991. Thereafter, on April 5, 1991, the counsel for the numerous appellants wrote a letter to the Jefferson County District Clerk's office requesting the preparation of a transcript in this appeal. The request letter asked for the inclusion in the transcript of those documents that had been severed by the trial judge's Summary Judgment. Appellants also requested the clerk's office to include in the transcript certain important, additional documents, pleadings, and written matters that were not ordered placed in the papers of the severed cause of action by Presiding Judge Gary Sanderson. Those documents included the "Plaintiffs' Fifth Amended Petition" and the "Plaintiffs' Sixth Amended Petition".

An examination and a comparison of the 45 different items that were ordered copied and filed in the severed cause of action and those items requested and prepared for the inclusion in the transcript by appellants will demonstrate that certain additional items had been included from the files of the original cause number B–126,986. Simply put, certain pleadings and other documents and other written matters that were needed for the instant appeal were not found or located in the severed cause of action being cause number B–126,986–A. There are numerous, massive volumes of transcripts that were prepared by the District Clerk's office on file with the Court of Appeals Clerk. Both cause numbers are listed on the cover sheets of the transcripts. Apparently, the transcripts contain pleadings from both cause numbers.

The request letter petitioned the District Clerk to forward the transcript when it had

been completed to the Clerk of the Court of Appeals along with a statement of facts of the hearing on the Motion for Summary Judgment conducted on February 5, 1991. The statement of facts included the arguments of counsel.

The record makes it clear that the issues in this appeal were from the granting of the motions for partial summary judgment. Perhaps more accurate jargon would be to characterize these judgments as final, appealable summary judgments in a severed action. Ordinarily, partial summary judgments lack finality and, hence, appealability, because partial judgments do not dispose of all parties and all issues.

### The Issue of the Certificate's Number

On April 5, 1991, a certificate of cash in lieu of cost bond was filed. Several of the appellees advance and argue in their motion to dismiss appeal that a jurisdictional error has occurred. The basis of the alleged jurisdictional error was that the certificate prepared by the District Clerk's office only had the old, original cause number. The certificate prepared by the District Clerk's office did not have listed the severed number. The appellants argue that the $1,000 cash deposit that was filed and placed in the District Clerk's office met the requirements of TEX.R.APP.P. 46(b) reading:

> In lieu of a bond, appellant may make a deposit with the clerk pursuant to Rule 48 in the amount of $1,000, and in that event the clerk shall file among the papers his certificate showing that the deposit has been made and copy same in the transcript, and this shall have the force and effect of an appeal bond.

■ The first certificate that was prepared by the District Clerk's office contained only the old cause number and did not spell out the new, severed cause number. We conclude this fact is not a jurisdictional error. An opinion by the San Antonio Court of Appeals, *Evans v. Evans*, 809 S.W.2d 573 (Tex.App.—San Antonio 1991, no writ) held that where the appellant filed a bond within the jurisdictional time limit, although the bond filed was lacking in that it contained the wrong cause number; and, thereafter there was presented a motion to dismiss the appeal because of this defect (being a defect in form), the appellate court may allow the defect to be corrected by filing a new bond. TEX.R.APP.P. 46(f).

■ Moreover, a defective bond wherein the defect is the failure to list the new severed cause number does not defeat the jurisdiction of the appropriate court of appeals. *See Davis v. Jefferies*, 764 S.W.2d 559 (Tex.1989). The rule has been established that when an appellant files an instrument or a document that is clearly intended to be a bond and intended to invoke the appellate jurisdiction of a court of appeals, that instrument may (upon a proper motion to dismiss the appeal or upon a timely request) be then amended to cure any defect either as to form or as to substance. *Id.* at 560. *See and compare Woods Explor. & Prod. Co. v. Arkla Eq. Co.*, 528 S.W.2d 568 (Tex.1975). By like reasoning we hold that a certificate made by the District Clerk showing a cash deposit in lieu of an appeal bond may be so amended and corrected to cure any defect of form or substance. We hold jurisdiction is vested in this appeal. We overrule appellees' reply point one.

A phase of this litigation has been before this court at a previous time. Certain relators had sought writ of mandamus relief. *See Air Products & Chemicals v. Sanderson*, 789 S.W.2d 651 (Tex.App.—Beaumont 1990, orig. proceeding).

### The Issue of the Two (2) Year Statute of Limitation

In this appeal the issues began to be joined by the defendants' motion for a "partial" summary judgment. In that motion twenty-two (22) defendants asserted that the statute of limitations on both the wrongful death counts and survival of action counts was definitely governed by TEX. CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986), mandating that a party must bring an action for wrongful death within two years after the death of the decedent. The defendants vehemently argue that the statute means exactly what it says and its

clear meaning has been strictly interpreted by the Texas Supreme Court in *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348 (Tex. 1990). Therefore, the motion pleads that a wrongful death suit that is brought more than two years after the actual date of death of the decedent is absolutely barred by TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(b). The defendants' motion for summary judgment addresses the "survival claims" citing and referring to TEX.CIV. PRAC. & REM.CODE ANN. § 16.062. This section suspends the running of an applicable statute of limitation for a period of time up to twelve months after the death of a person in whose favor there may be a cause of action. If a personal representative qualifies before the twelve months, then the statute of limitations begins to run at the time of qualification.

### The Moreno v. Sterling Drug, Inc. Case

Subsequent to the first motion for summary judgment numerous other defendants filed pleadings and motions that virtually adopted the original motion for summary judgment. The numerous plaintiffs filed their response to the motions for summary judgment in mid-January 1991. The *Moreno, supra,* case came before the Supreme Court of Texas upon certified questions from the United States Court of Appeals for the Fifth Circuit. The Supreme Court of Texas pursuant to TEX. CONST. art. V § 3-c had jurisdiction to answer the following certified questions:

1. Does the "discovery rule" apply to the Texas Statute of Limitations, TEX. CIV.PRAC. & REM.CODE § 16.003(b), in an action brought pursuant to the Texas Wrongful Death and Survival Statutes, TEX.CIV.PRAC. & REM.CODE § 71.001 *et seq.* and § 71.021, respectively?

2. If the discovery rule does not apply to the Texas Statute of Limitations in wrongful death and survival actions, does that statute of limitations as applied to the plaintiffs herein, violate the open courts provision of the Constitution of the State of Texas, TEX. CONST. art. I § 13?

*Id.* at 349.

The Texas Supreme Court emphasized that these questions were before the high court on certified questions declaring this procedural device to be very limited. Justice Spears wrote:

> This is a very limited procedural device; we answer only the questions certified and nothing more. *See* Tex.R.App.P. 114. Thus, the whole case is not before this court as it would be in an ordinary appeal.

*Id.* at 349.

Justice Spears characterized the first certified question thusly:

> The first question is whether the "discovery rule" applies to the statute of limitations for actions based on injuries resulting in death.

*Id.* at 350.

Plaintiff Moreno contended that the "discovery rule" should definitely apply to the section 16.003(b) because he neither knew or could have known the cause of his damages within the two-year limitation period. Moreno with specificity asserted that his suit was timely brought because it was filed within two years of the discovery of the link between Bayer Children's Aspirin and Reye's syndrome.

### The Fraudulent Concealment Theory

Paramount and significant is *Moreno, supra,* 787 S.W.2d at 352 n. 1, reading as follows:

> *Moreno has not argued that the doctrine of fraudulent concealment operates to toll the running of limitations in this case; nor has the Fifth Circuit requested that we address this issue.* The doctrine of fraudulent concealment provides that where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex. 1983). *Because the question of the doctrine's applicability in the present case*

*is not properly before us, we express no opinion on the issue.* (emphasis added)

Hence, while *Moreno* does stand for the proposition that in ordinary circumstances the application of the "discovery rule" will not be applied to section 16.003(b) as a matter of statutory construction; nevertheless, the *Moreno* opinion clearly does not resolve the question of whether the doctrine of fraudulent concealment when properly presented operates to toll the running of the applicable statute of limitation.

A basic thrust of the plaintiffs' response is that no one of the defendants has presented acceptable summary judgment proof or affidavits which address or contravene any of the plaintiffs' allegations of fraud, concealment of a cause of action, destruction of evidence, conspiracy or fraudulent concealment.

■ We hold that *Moreno* fails to implicate the doctrine of fraudulent concealment. We hold that section 16.003(b) is tolled until the party to whom it belongs learns of the right of action or should have learned of the right of action through the exercise of reasonable diligence—provided that fraudulent concealment is involved.

### Standard of Review Under Rule 166a

The motions for summary judgment are to be reviewed following these criteria: (1) the movant for summary judgment has the burden of showing that there is no genuine issue as to any material fact and that the movant is entitled to the granting of the judgment as a matter of law; (2) *in deciding whether or not there is a disputed material fact issue which would preclude the summary judgment, the evidence favorable to the non-movant will and must be taken as true; and (3) every reasonable inference must be indulged in in favor of the non-movant and any doubts resolved in the favor of the non-movant.* See *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–549 (Tex.1985). The above criteria are well established.

### The Malooly Brothers, Inc. v. Napier Procedural Rule

Appellants' point of error number one has been properly presented and briefed and argued with authorities as recommended in all summary judgment appeals by the Supreme Court in *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119 (Tex. 1970). The appellants herein correctly advance and brief their point of error number one so as to allow argument and relief as to all the possible grounds upon which the trial court, according to the appellants, should have denied the motion for summary judgment. We conclude that the response of the plaintiffs-appellants to the movants' motion for summary judgment raises the issues of fraud and fraudulent concealment. *See and compare Estate of Stonecipher v. Estate of Butts*, 686 S.W.2d 101 (Tex.1985); 579 S.W.2d 27 (Tex.Civ. App.—Beaumont 1979), *rev'd* 591 S.W.2d 806 (Tex.1980). In *Stonecipher*, 591 S.W.2d at 809, Justice Campbell wrote:

> Our courts have consistently held that fraud vitiates whatever it touches, *Morris v. House*, 32 Tex. 492 (1870), and that limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence. *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438 (1940). Reasonable diligence is a question of fact. *Ruebeck et al. v. Hunt et ux.*, 142 Tex. 167, 176 S.W.2d 738 (1943).

We hold that the four-year statute of limitation is not applicable.

We further hold that the remand ordered hereunder is a limited remand and we hold that the plaintiffs can pursue only their cause of action based on fraud or fraudulent concealment. Plaintiffs must prove on the merits, of course, by a preponderance the underlying tortious cause of action. As an intermediate appellate court we are constrained to strictly follow and are bound to adhere assiduously to the Supreme Court's opinion in *Moreno, supra*. So must the plaintiffs adhere.

### The Dropped or Omitted Plaintiffs

Herculean efforts and many hours of diligent endeavor were expended to ascer-

tain which plaintiffs were actually omitted or dropped out of the pleadings. A great number of names had to be checked through the Plaintiffs' Original Petition and continuing thereafter through the First, Second, Third, Fourth, Fifth, Sixth and Seventh Amended Original Petitions. Our re-reading, research and analysis show that Samuel L. Baker, Gerald A. Dwyer, Joe Fazio and R.A. Fortenberry were omitted or dropped from one or several amended pleadings.

These four named plaintiffs were omitted, deleted or dropped through inadvertence apparently. Since the plaintiffs number more than 1100, such inadvertence or mistake is understandable and excusable. *Abramcik v. U.S. Home Corp.*, 792 S.W.2d 822 (Tex.App.—Houston [14th Dist.] 1990, writ denied). *But see Evans v. Hoag*, 711 S.W.2d 744 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). We remand as to these four named plaintiffs.

We observe and find that the plaintiffs Orville Gore, Haldor Rigsby and Robert E. Travis have formerly and formally taken non-suits. We affirm the judgment as to these three named plaintiffs.

### The Late Supplemental Proof

■ The defendant-appellees filed quite late a supplement to their "Motion For Partial Summary Judgment". This supplement was *filed only one day prior to the actual hearing on the motion.* Appellants simply had no reasonable time to reply or respond thereto. The filing date of appellees' supplement was inconsistent with TEX.R.CIV.P. 166a(c). Rule 166a(c) mandates that the movant shall file his motion or motions and any supporting affidavits twenty-one (21) days before the date of the hearing. Also, notice to opposing counsel of the supporting affidavits shall be served at least twenty-one (21) days before the date of the hearing.

The appellees present a reply point asserting that the trial bench did not err or abuse its discretion in considering a lengthy supplement to the defendants' motion. Appellees rely on each of the plaintiffs' answers to a certain interrogatory number 28 and also an affidavit verifying the same. This supplement filed February 4, 1991, contains 85 legal size pages. The appellees maintain that each one of the plaintiffs responded to a certain interrogatory that was posed to the plaintiffs which inquired whether the plaintiffs allege that any defendant entered into a conspiracy to *withhold medical and scientific information concerning asbestos.* Significant and important it is to note that the "conspiracy" was relevant to medical and scientific information concerning asbestos, the material. The appellants' response or answer was in substance that the plaintiffs do not allege a conspiracy and further, should discovery lead to evidence supporting such a claim, then the plaintiff or plaintiffs would supplement their answers to this interrogatory. The appellees argue for complete relief based on the answer to interrogatory number 28. But the appellants took the position that should discovery lead to evidence of a conspiracy then the various plaintiffs would supplement their individual answers.

The hearing on the summary judgment motion was held February 5, 1991—only one day after filing the supplement. The trial judge announced his decision from the bench on February 5 at the end of the hearing. The summary judgment proof of the appellants which had been previously and timely filed contravenes the appellees' position on the underlying cause of action. When the affidavits conflict, an issue is created under the summary judgment practice. We think that the appellants simply did not have a reasonable amount of time to answer the appellees' 85 legal size page supplement. Many of these legal size pages are single spaced and a great deal of material was presented.

In live pleadings, the plaintiffs, inter alia, set forth allegations of conspiracy, fraud, spoilation, concealment of causes of action, the toxicity quality of asbestos, that the defendants acted in concert and tortiously (in some instances with the *intent* of committing torts injurious to the various plaintiffs), that the various defendants were alleged to have advanced and pursued or to

have otherwise implemented agreements concerning misrepresentation, concealment and destruction of scientific and legal evidence concerning the health hazards of asbestos and its toxicity.

Further, the plaintiffs specifically alleged as a basis of their recovery the "tort of spoliation of evidence". Additionally, the defendants were charged with acting in concert to destroy or to conceal certain information and to prevent that information from falling into the hands of the victims and that this scurrilous conduct was an intentional interference with the plaintiffs' prospective civil action and that this scurrilous conduct was no less than a mutilation of the community's rational process of proof.

Furthermore, it was alleged that the defendants below having adopted a code of secrecy and suppression. Then the defendants necessarily fell into vice and roguery (with apologies to Dr. Johnson) as the petrochemical pismires [1] quickly joined together in maintaining a united front in the suppression of evidence and the destruction of documents. There were other and additional piercing, aggressive and condemning allegations. *Hence, we cannot agree with the assertion made by the appellees that the trial court properly entered a final judgment for the appellees on all the issues pleaded in the plaintiffs' seventh amended original petition. See Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970).

In *Gibbs,* Chief Justice Calvert wrote:

[T]he question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action. (emphasis theirs)

Undoubtedly the hearing on the supplemental motion was held on February 5, 1991, beginning at 1:40 p.m. The trial jurist announced from the bench on the same afternoon: "I'm going to grant the motion". Hence, the trial bench's action in considering the supplement was incorrect.

Our mandate limits the trial on the merits to the underlying cause or causes of action that were tainted with fraud or fraudulently concealed.

The transcript record reflects that certain prior pleadings were filed by thirty-eight (38) of the appellants. Thirty-seven (37) appellants had apparently filed these prior pleadings in the United States District Court for the Eastern District of Texas, Beaumont Division. One of the appellants, Darla Kaye Harrington, Individually and as Independent Executrix of the Estate of William Benjamin Kirksey, Deceased, had previously filed pleadings in a state court. A "Notice of Filing of Prior Actions" contained these prior pleadings. The attached pleadings certainly appear to be authentic but none are certified. No affidavit supports the "Notice". We perceive these prior pleadings are not proper summary judgment proof; they are neither authenticated or certified. TEX.R.CIV.P. 166a(b)(c). Only two or three of the pleadings are complete. The posture, status and incompleteness of the pleadings in the United States District Court do not prove that the appellees are entitled to the motion for summary judgment as a matter of law. Rule 166a(c)(ii). This is especially true because in most instances only the first page of the pleading in the Federal Court is in the record before us. The record is silent as to the results in Federal Court. No verdicts, judgments, releases, dismissals or similar court documents are shown. About thirty-five (35) of these prior pleadings are mute after the first page. But in view of this unusual, if not unique, state of the record we do not intend, of course, to limit the district judge's motion practice or docket.

1. Definition: *pissemire,* fr. *pisse* piss + *mire* ant, of Scand origin; ... the smell of anthills, due to the formic acid exuded by ants ...; an insignificant or contemptible person. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1723 (1986).

AFFIRMED in part; REVERSED AND REMANDED in part for proceedings consistent with this opinion.